205 N.J. Super. 153 (1985)
500 A.2d 394
JOHN W. LEE, PETITIONER-RESPONDENT,
v.
W.S. STEEL WAREHOUSING, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1985.
Decided October 4, 1985.
Before Judges PRESSLER, DREIER and BILDER.
*154 Nancy S. Freeman argued the cause for appellant (Freeman and Barton, attorneys; Nancy S. Freeman, on the brief).
Kenneth A. DiMazio, for petitioner-respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Among the recurring interpretive problems raised by the 1979 revision of the Workers' Compensation Act, N.J.S.A. 34:15-1 to -128, was the question of how compensation should be calculated when an employee sustains multiple injuries in a single, compensable accident. The controversy as to whether N.J.S.A. 34:15-12(c), as amended by L. 1979, c. 283, § 5, mandated "stacked" or separately calculated benefits was finally resolved by the Supreme Court in Poswiatowski v. Standard Chlorine Chemical Co., 96 N.J. 321, 334-335 (1984), which held that "the weeks of compensation awarded for one accident's multiple injuries that establish a single compensable disability should be cumulated, not separated, in computing the award." Recognizing that some compensation judges had construed the statute as requiring separate rather than stacked computation of benefits, the Director of the Division of Workers' Compensation issued a memorandum to all compensation judges on June 6, 1984, less than two weeks after Poswiatowski was decided. The memorandum instructed them that prior judgments and orders approving settlements entered inconsistently with Poswiatowski should be regarded as having been erroneously computed and accordingly that such judgments and orders "should be amended upon application to conform with the ruling of the Supreme Court and to correct the mistake." The question before us is whether implementation of the directive contravenes applicable law and principle respecting the finality of administrative agency judgments. We hold that it does not.
Petitioner John W. Lee lost three fingers of his right hand in an industrial accident which occurred on September 30, 1980. By judgment entered on May 18, 1983, his permanent disability *155 was determined to be 50% of the statutory right hand for which he was awarded 122.5 weeks resulting in scheduled compensation of $6,176.50 and an additional 10% permanent partial total for the "orthopedic, neurologic, cosmetic and neuropsychiatric residuals of the traumatic amputation of the statutory 1st, 2nd and 3rd fingers of the right hand with resultant deformity, weakness and atrophy with an accompanying psychoneurosis and an anxiety reaction." This 10% resulted in an additional 60 weeks of scheduled compensation yielding an additional $2,820.00. The total award, computed by adding these two sums, was $8,996.50. Petitioner did not appeal, even though he would have been entitled, had the award been cumulatively calculated, to the weekly rate for 182.5 weeks, namely, 35% of the statewide average weekly wages, or $86 per week for a total award for permanent disability of $15,695.00. See N.J.S.A. 34:15-12(c). And see Poswiatowski, supra, 96 N.J. at 324 n. 1, explaining the methodology by which the amount of the weekly rate is increased proportionally to the number of weeks awarded.
On June 18, 1984, some thirteen months after entry of the judgment but only twelve days after the Director's memorandum, petitioner's attorney wrote to the compensation judge requesting that in compliance with the memorandum an amended form of judgment be entered recalculating the award in accordance with Poswiatowski. A copy of the request was sent to respondent's attorney. On July 3, 1983, the judge granted this request, explaining that he was doing so in conformance with the directive and on his own motion.[1] A conforming amended judgment was accordingly entered increasing petitioner's award to $15,695.00.
*156 In appealing from the entry of the amended judgment, respondent concedes that the Division of Workers' Compensation has the inherent power, parallel to that of the courts, to reopen its own judgments on equitable grounds in the interests of justice. That proposition is indeed a well-settled principle of administrative law regularly applied to judgments of the Division of Workers' Compensation. See, e.g., Beese v. First National Stores, 52 N.J. 196, 200 (1968); Conway v. Mister Softee, Inc., 51 N.J. 254, 260 (1968); Estelle v. Board of Education of Red Bank, 14 N.J. 256, 261 (1954); Camp v. Lockheed Electronics, Inc., 178 N.J. Super. 535, 545 (App.Div. 1981), certif. den. 87 N.J. 415 (1981); Hyman v. Essex Cty. Carpet Cleaning Co., 157 N.J. Super. 510, 516 (App.Div. 1978); V. v. Long Branch Sewerage Auth., 86 N.J. Super. 56, 60 (App.Div. 1964); Eclipse, etc., Bendix Aviation Corp. v. Minter, 35 N.J. Super. 430, 437-438 (App.Div. 1955); Stone v. Dugan Brothers of N.J., 1 N.J. Super. 13, 17-18 (App.Div. 1948). And see Wunschel v. City of Jersey City, 96 N.J. 651, 669 (1984). Respondent's thesis, rather, is that the Division's power to reopen its judgments is congruent with that of the courts as circumscribed by R. 4:50 and that a proper application of that rule forecloses the relief here granted by the Division. We disagree.
We are satisfied that the amendment of this judgment accorded both with the equitable principles underlying the court rule and with the rule's substantive and procedural qualifications. R. 4:50-1(a) permits relief from judgment on the ground of mistake, inadvertence, surprise, or excusable neglect. R. 4:50-1(f) permits relief from judgment for "any other reason justifying relief from the operation of the judgment or order." An application pursuant to paragraph (a) is required to be made within one year after entry of the challenged judgment. An application pursuant to paragraph (f) need only be made within a reasonable time thereafter, reasonableness being dependent upon the totality of the circumstances. See R. 4:50-2. Respondent argues that relief was improvidently granted under paragraph *157 (a) because an application was not made within a year from the date of the judgment. It argues further that neither the "mistake" provision of paragraph (a) nor the "other reason" provision of paragraph (f) comprehends relief from a judgment which is based upon a statutory interpretation reasonable in its face and widely concurred in but subsequently held by the Supreme Court in different litigation to have been incorrect. In short, its position is that Poswiatowski merely constituted a change in the substantive law beyond the remedial reach of R. 4:50-1(f). There is some superficial merit in this argument. See, e.g., Hartford Ins. Co. v. Allstate Ins. Co., 68 N.J. 430 (1975).
In our view, however, the flaw in respondent's argument is its failure to take into account the circumstantial breadth of paragraph (f). Justice Francis explained in Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966), that
No categorization can be made of the situations which would warrant redress under subsection (f). As Justice Proctor noted in Hodgson v. Applegate, 31 N.J. 29, 41 (1959), the very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.
We recognize too that the availability of relief under subsection (f) becomes an even more compelling matter in those circumstances in which considerations of significant public policy conjoin with considerations of individual justice in demanding rectification of error. See, e.g., Manning Engineering, Inc. v. Hudson Park Comm'n, 74 N.J. 113, 123 (1977); Castiglioni v. Castiglioni, 192 N.J. Super. 594, 597 (Ch.Div. 1984). Indeed, the overriding dictates of public policy may well require relief from a judgment improvidently entered in circumstances in which the concern for justice between private litigants might itself be inadequate to tip the balance away from principles of finality. Thus, we note that while a mistake of law may not ordinarily warrant relief in the courts under R. 4:50, such a mistake has been held to be sufficient cause for setting aside a determination *158 of an administrative agency which is fundamentally contrary to the remedial social legislation the agency is charged with administering. See, so holding in respect of the Division of Workers' Compensation, Camp v. Lockheed Electronics, Inc., supra, 178 N.J. Super. 535; Hyman v. Essex Cty Carpet Cleaning Co., supra, 157 N.J. Super. 510. This is just such a case.
The Poswiatowski Court reached its holding because of its conviction that the primary purpose of the amendatory scheme was to afford greater benefits to more seriously injured workers while minimizing or even denying benefits for minor injuries. 96 N.J. at 328. The Court was also convinced and clearly explained how "stacking" promotes this purpose by compensating an employee commensurately with the full effect of the overall disability which results from several separate injuries. Indeed, Poswiatowski leaves no doubt that the failure to stack and the consequent depreciation of the overall disability would in substantial measure abrogate the legislative will embodied in the 1979 amendments.
It is thus clear that those employees, such as petitioner here, who sustained separate injuries in a single accident after January 10, 1980, the effective date of L. 1979, c. 283, who were not compensated on a stacked or cumulative basis, and who were thereby denied the intended benefit of the amended law, constitute a special class entitled to the remedial treatment which was accorded to this petitioner. It is only by a recalculation of the erroneously awarded unstacked benefits that such employees can be accorded the full measure of compensation which the law had provided for them but which they were erroneously denied. Such recalculation, moreover, avoids a consequent windfall to their employers, who otherwise would have enjoyed the benefit of minimization of minor injuries without having had to pay to this class of employees the greater compensation for more serious disabilities as demanded by the Legislature. *159 It is also evident, and respondent so concedes, that all that is necessary to effect this statutorily consistent readjustment is a simple mathematical procedure in which all of the information necessary to effect the recalculation appears on the face of the judgment itself. None of its other predicates are in any way affected. In view of all these considerations, we are persuaded that the principles of section (f) of R. 4:50-1 were properly relied on here by the Division. This is indeed an exceptional situation in which a correction of a mistake of law is compelled in order that individual justice be accomplished and public policy be served.
Finally, respondent argues that the Director of the Division of Workers' Compensation improperly issued the directive which was here complied with. Its notion seems to be that by so doing he interfered with the right and responsibility of each judge of compensation to consider each application for relief pursuant to Poswiatowski on its own merits. We disagree with this contention. Indeed, we commend the Director for taking prompt and definitive action which not only forestalled further confusion and inconsistency of result but which also provided an expeditious and appropriate class remedy in conformance with legislative intent. Over two decades ago, Judge Conford cogently pointed out that
Under the social philosophy underlying Workmen's Compensation legislation in this state the Division is not a mere quasi-judicial tribunal confined to the duty of deciding formally litigated claims. It is properly expected to take the initiative where necessary to assure the prompt and full provision for injured workers of all the statutory benefits to which they are entitled in a given case. Esso Standard Oil Co. v. Holderman, 75 N.J. Super. 455, 467 (App.Div. 1962), aff'd o.b. 39 N.J. 355 (1963), app. dis. 375 U.S. 43, 84 S.Ct. 148, 11 L.Ed.2d 107 (1963).
The Director's conduct here met the high standard of responsible agency action required for the fair and proper administration of remedial social legislation.
Affirmed.
NOTES
[1] The sua sponte characterization of the amended order was misleading since petitioner had made a specific, albeit informal, application. While respondent did not respond to petitioner's letter, its attorney, who was before the judge on other matters on July 3, 1983, was advised, prior to entry of the amended order, of the judge's intention to grant petitioner's request.