229 N.J. Super. 445 (1988)
551 A.2d 1030
PORT OF MONMOUTH DEVELOPMENT CORPORATION, PLAINTIFF-APPELLANT,
v.
MIDDLETOWN TOWNSHIP, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1988.
Decided December 28, 1988.
*446 Before Judges J.H. COLEMAN and BAIME.
*447 Kevin P. Cooke argued the cause for appellant (Winne, Banta, Rizzi, Hetherington & Basralian, attorneys; Joseph L. Basralian, of counsel; Donald A. Klein and Kevin P. Cooke on the brief).
Bernard M. Reilly argued the cause for respondent (Dowd & Reilly, attorneys; Bernard M. Reilly on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The crucial issue raised in this appeal is whether a successor in title to land used as a municipal sanitary landfill can compel the former municipal operator of the landfill to comply with its closure responsibilities. Plaintiff filed a complaint on April 1, 1986 seeking an injunction directing defendant to comply with its closure obligations under the Solid Waste Management Act (SWMA), N.J.S.A. 13:1E-1 et seq. The complaint was in essence amended by a pretrial order to permit plaintiff to seek damages for abatement of a common law nuisance, breach of an alleged covenant running with the land and indemnification.
On March 3, 1988, the trial judge granted summary judgment dismissing the complaint. The claims based on a breach of an alleged covenant and common law nuisance were dismissed with prejudice. The claim for indemnification was dismissed without prejudice. The indemnification claim is based on a provision in a lease between defendant and the former owner of the landfill property. We now affirm the dismissal of the claims based on an alleged covenant and common law nuisance. We reverse that portion of the summary judgment which dismissed plaintiff's request to compel defendant to comply with its closure responsibilities.
The facts essential to our decision are not in dispute. In 1963, defendant Middletown leased approximately 62 acres of vacant land from its then owner, J. Howard Smith, Inc. The land was leased to operate a municipal sanitary landfill. Defendant operated the landfill between 1963 and 1976. The landfill was registered by the New Jersey Department of *448 Environmental Protection (DEP) on June 24, 1970. During the operation of the landfill, the DEP found numerous violations because the solid waste deposited in the landfill was covered inadequately.
On May 20, 1976, defendant's acting engineer presented the Mayor and Township Committee with a report concerning the termination of the landfill operations. The report indicates that the Township Engineer contacted the Bureau of Solid Waste Management within the DEP and "asked what specific requirements they [sic] would impose on the Township if the Township should decide to close the landfill." The Bureau indicated that it would require a final cover of two feet over the landfill in addition to a grass cover. The Township was also advised that it would be required to install methane gas vents across the landfill. The cost of closing the landfill was estimated at $662,400.
On October 9, 1976, representatives from the Township met with the DEP concerning the closure of the landfill. An agreement was reached whereby the Township agreed, among other things, that closure would include methane gas vents, a final cover consisting of a minimum of one foot clay and one foot of top soil and a grass cover. See N.J.A.C. 7:26-1.4 (formerly 7:26-1.4.15 and.27, "cover material" and "final cover"). A March 15, 1977 inspection conducted by the DEP revealed that defendant had not met the agreed to closure requirements. A notice of prosecution was sent to defendant on April 14, 1977 and defendant was given until May 16, 1977 to comply. That deadline date passed. Based on the record before us, not much was done to force compliance. On August 8, 1978, defendant's manager advised the landowner that defendant was taking steps to close the landfill. But inspections performed by the Monmouth County Board of Health on July 30 and August 11, 1981 revealed that areas of solid waste were still not covered.
On November 3, 1980, the owner of the land gave an option to plaintiff to purchase the land. Plaintiff submitted to the *449 Planning Board conceptual plans for a planned unit development. On February 13, 1981, the Director of Planning & Community Development submitted his thoughts. He was impressed to say the least. He commented that the proposal would exceed one million dollars. He stated that the planned development would eliminate defendant's liability for proper closure of the landfill. The authority for this conclusion is not revealed in the record. Plaintiff exercised the option to purchase the landfill acreage on July 16, 1982 and title was closed on November 4, 1982. It is clear from the record that plaintiff was aware that it was purchasing a former sanitary landfill.
In this appeal, plaintiff argues that the trial court should not have dismissed its application to compel defendant to comply with its closure responsibility. The Middletown landfill is a solid waste facility under the SWMA, N.J.S.A. 13:1E-3(i). Also, the SWMA controls the closure of sanitary landfills and is supplemented by the Sanitary Landfill Facility Closure Act and Contingency Fund, N.J.S.A. 13:1E-100 et seq. N.J.S.A. 13:1E-103 imposes joint and several liability upon the owner and operator for proper closure of the landfill. No exception from the legislative scheme has been granted municipalities. N.J.S.A. 13:1E-5(b). Rules governing the closure of sanitary landfills have been promulgated pursuant to the SWMA, N.J.S.A. 13:1E-6. These rules are contained in N.J.A.C. 7:26-1 et seq. In general, the closure of a landfill requires a minimum of two feet of compacted cover of soil, earth or other insoluble and nondegradable material approved by the DEP. N.J.A.C. 7:26-1.4 (formerly N.J.A.C. 7:26-1.4.27, "final cover"). Defendant has not complied with these closure requirements and the DEP has not forced compliance even though the landfill was officially closed twelve years ago.
The Environmental Rights Act, N.J.S.A. 2A:35A-1 et seq. permits any person to seek enforcement of the SWMA. N.J.S.A. 2A:35A-4 provides:
Actions to enforce laws on pollution, impairment or destruction of environment, or to protect environment; dismissal of frivolous actions

*450 a. Any person may maintain an action in a court of competent jurisdiction against any other person to enforce, or to restrain the violation of, any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment.
b. Except in those instances where the conduct complained of constitutes a violation of a statute, regulation or ordinance which establishes a more specific standard for the control of pollution, impairment or destruction of the environment, any person may maintain an action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction. .. .
In Tp. of Howell v. Waste Disposal, Inc., 207 N.J. Super. 80 (App.Div. 1986), we outlined the circumstances in which suit may be brought under the Environmental Rights Act when the DEP is not actively seeking compliance with the appropriate statutes or regulations. We stated:
In enacting the Environmental Rights Act the Legislature has recognized that the DEP may fail to act to correct a particular problem or not take proper and necessary action where conflicting interests appear. Further, in a given situation DEP may seek less than full relief available under relevant legislation. In such a case, there is a clear right granted to other "persons" to seek such relief under the Environmental Rights Act. [Id. at 96].
See also Superior Air Prod. v. NL Industries, 216 N.J. Super. 46, 58-59 (App.Div. 1987); I.H.R.A.C. v. Diamond Shamrock Chem. Co., 216 N.J. Super. 166, 174-175 (App.Div. 1987). Here it is clear that plaintiff is one of those other "persons" seeking relief. Similarly, Middletown Township is one of those "persons" against whom an action pursuant to the Environmental Rights Act may lie. N.J.S.A. 2A:35A-3(a). It is now well established that where intent is made clear in its language, courts will enforce a statute according to its terms. Sheeran v. Nationwide Mutual Ins. Co., 80 N.J. 548, 556 (1979); Russell v. Saddle Brook Restaurant Corp., 199 N.J. Super. 186, 188 (App.Div. 1985).
In dismissing plaintiff's complaint the trial court observed that the DEP had been "muttering" about requiring Middletown to properly close the landfill site for years. The record supports this finding. The DEP filed a notice of prosecution against the defendant Township for failing to cover all exposed *451 surfaces of solid waste. The DEP also met with the Township and came to an agreement concerning the engineering plans for closure. Additionally, the DEP filed an order against defendant Middletown concerning the Township's failure to obtain an approved registration statement or an approved engineering design. In spite of these efforts, the DEP has taken no legal action and has imposed no monetary sanctions to compel Middletown to properly close the landfill. The court below accurately observed that, "[t]he DEP is still kind of doing a dance, I think." After "dancing" for twelve years, it seems reasonable to conclude that the DEP has failed to act effectively to compel closure in accordance with the regulations. In the circumstances of this case, we perceive no reason for plaintiff and the public to wait any longer.[1] Therefore, the injunctive relief sought in the complaint should not have been dismissed. We do not decide, however, what if any impact the Tort Claims Act will have on the injunctive relief sought.
Plaintiff further contends the trial court should not have dismissed its nuisance claims. We disagree. An action, in nuisance against defendant, a public entity, is controlled by the standards contained in the Tort Claims Act. Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 593 (1982). Even if plaintiff can establish that it sustained special damages over and above those suffered by the general public, see Alpine Borough v. Brewster, 7 N.J. 42, 52 (1951), it did not comply with the 90-day notice required by the Tort Claims Act, N.J.S.A. 59:8-8. The record clearly establishes that plaintiff knew more than four years before filing the complaint in 1986 that *452 the property had been used as a landfill, see N.J.S.A. 13:1E-116 and 118, and that defendant had not properly closed the landfill. A purchase made with knowledge of the facts which form the basis for the nuisance claim is a defense to a nuisance claim based on that state of facts. See Krauth v. Geller, 54 N.J. Super. 442, 453 (App.Div. 1959), aff'd 31 N.J. 270 (1960). Hence, the nuisance claim was properly dismissed.
Finally, plaintiff argues that defendant owed an obligation to plaintiff to properly close the landfill based on a covenant which ran with the land. This argument is also unpersuasive. The only pertinent covenant which defendant gave was contained in the lease it signed with the former owner. The contract of sale and the deed which conveyed legal title to the land to plaintiff are silent as to any obligation which defendant had to close the landfill. The trial judge therefore properly concluded that there was no covenant running with the land which permitted plaintiff's claim.
We reverse summary judgment dismissing plaintiff's request for an injunction compelling defendant to properly close the landfill based on N.J.S.A. 2A:35A-4. In all other respects, summary judgment is affirmed.
NOTES
[1] Our decision permitting plaintiff to seek injunctive relief to compel defendant to properly close the landfill should not be interpreted as permitting plaintiff to seek damages under strict liability. This was not a hazardous waste landfill. See State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 488-492 (1983); T & E Industries, Inc. v. Safety Light Corp., 227 N.J. Super. 228, 238-241 (App.Div. 1988). We add further, the fact that plaintiff purchased a closed landfill for a price which reflected that fact does not interfere with its rights afforded by the Environmental Rights Act.